## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES BIGHAM, JOHN QUARNSTROM, ROBERT VRANICAR, JIM BOWMAN, MIKE MCCAULEY, and MATT FAIRBANKS, as Trustees of the Sheet Metal Local #10 Control Board Trust Fund, and the SHEET METAL LOCAL #10 CONTROL BOARD TRUST FUND, | Case No. 18-CV-706 (NEB/ECW) |
| | ORDER ON PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT |
| Plaintiffs, | |
| v. | |
| JOHN W. MCDOUGALL CO. INC., | |
| Defendant. | |

Plaintiffs move for entry of default judgment against Defendant John W. McDougall Company, Inc. ("McDougall") for liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. [ECF No. 19.] Plaintiffs seek $66,534.35 for delinquent contributions and liquidated damages, and $7,090.04 for attorneys' fees and costs related to the collection of delinquent contributions. For the reasons addressed below, the Court grants Plaintiffs' motion. This matter was heard before the undersigned on April 24, 2019. Christy E. Lawrie of McGrann Shea Carnival Straughn & Lamb, Chartered, appeared for and on behalf of the Plaintiffs. There was no appearance on behalf of the Defendant.

**BACKGROUND**

Plaintiffs are the Trustees of the Sheet Metal Local #10 Control Board Trust Fund ("Control Board") [ECF No. 11 ("Am. Compl.") ¶ 1.] The Control Board is a clearinghouse that provides various services to employee benefit plans and is designated by various labor agreements as the entity to, amongst other things, accept and distribute contributions to the employee benefit plans specified in the labor agreement. (Am. Compl. ¶ 2.) The employee benefit plans on whose behalf the Control Board seeks contributions, and which the Control Board forms a part, are multi-employer jointly trusteed fringe benefit plans. (*Id.* ¶ 3.) Created and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1974, codified as amended at 29 U.S.C. § 186(c)(5), the funds maintained by the Control Board, including the Sheet Metal Local 10 Control Board Trust Fund ("the Fund"), are administered in accordance with ERISA. (*Id.*)

McDougall is bound to a collective bargaining agreement ("CBA") with Sheet Metal Workers Union Local No. 177 (the "Union"). [ECF No. 22 ("Rice Decl.") ¶ 2.] In September 2016, McDougall agreed to be bound by the terms of a Participation Agreement which required it to remit fringe benefit contributions to the Control Board (and its constituent fringe benefit funds) for each hour of work performed by its employees covered by the CBA with the Union who were performing work within the

jurisdiction of Sheet Metal Workers Union Local No. 10. (Am. Compl. ¶ 10; Rice Decl. ¶ 3.)

The Participation Agreement requires McDougall to remit fringe benefit contributions to the Fund on behalf of its covered employees for their hours worked. (Rice Decl. ¶ 3, Ex. A.) The employer is "delinquent" under the Participation Agreement if its remittance report and payment are not postmarked on or before the tenth day of the month following the month for which the contributions are due. (Rice Decl. Ex. B at 10.)[1] Additionally, the Participation Agreement gives the Control Board's trustees, or their authorized agent, the right to inspect a complete set of all relevant payroll and employment records. (Rice Decl. ¶ 5.)

Initially, McDougall was in breach of the terms of the Participation Agreement and Trust Agreements by failing and refusing to produce the requested payroll and employment records for the Audit Period. But following the filing of the Amended Complaint in this action [ECF No. 11], McDougall voluntarily complied with a request from the Control Board's authorized agent to produce a complete set of its payroll and employment records for the period of January 1, 2016 through December 31, 2017 (audit period). The Control Board's authorized agent reviewed these records and determined that there were hours worked by McDougall's employees covered by the Participation

---

[1] The Participation Agreement provides that the provisions of the Agreement and Declaration of Trust for the Fund are binding on McDougall. (Rice Decl. Ex. B.)

Agreement for which McDougall did not submit contributions to the Fund. In total, the Control Board's authorized agent determined that $54,060.39 is due and owing to the Fund for delinquent contributions during the audit period. (*See gen.* Rice Decl.) Plaintiffs allege that McDougall failed to pay these delinquent contributions. [ECF No. 29, Ex. C.]

Plaintiffs commenced this ERISA action against McDougall on March 14, 2018, seeking damages for unpaid contributions, liquidated damages, and attorneys' fees and costs. Plaintiffs served the summons and complaint on McDougall on March 14, 2018. McDougall then had 21 days to file an answer or otherwise respond to the complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). That deadline passed without any response to the complaint. Plaintiffs first applied for an entry of default on April 11, 2018 [ECF No. 5] and obtained entry of default from the Clerk of Court on April 12, 2018. [ECF No. 8.] Following the filing of the initial complaint, McDougall untimely submitted a payment in the total amount of $8,309.40 for which it is entitled to a credit. (Rice Decl. ¶¶ 7-9.) Thereafter, Plaintiffs filed an Amended Complaint [ECF No. 11] and applied for and obtained entry of default on May 31, 2019 [ECF No. 13] and June 5, 2019 [ECF No. 16], respectively. Plaintiffs then filed the pending motion for entry of judgment.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. First, the party seeking a default judgment must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Plaintiffs sought an entry of default, and the Clerk of Court entered default against McDougall on June 5, 2018. The Clerk of Court's entry of default is supported by the record, which reflects that McDougall was properly served and failed to answer or otherwise respond to the complaint. The first step of the process has been completed.

Second, after default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). For this reason, the sole remaining issue before the Court is to determine the amount of damages. *See Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). A party entitled to a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). The district court may establish damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944).

Section 502(g)(2) of ERISA governs the calculation of damages for an employer that fails to fulfill its contribution obligations, providing that a court shall award:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

    (i)      interest on the unpaid contributions, or

    (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent ... [of the unpaid contributions],

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). "The legislative history of these provisions explains that Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts." *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988).

In support of his motion for default judgment, Plaintiffs submitted sworn testimony from the Control Board's Administrator, Sheila Rice, addressing the amounts due for delinquent contributions and liquidated damages for the audit period. These amounts are derived from an audit invoice prepared by the Control Board's authorized agent based on McDougall's payroll and employment records. Plaintiffs also seek attorneys' fees and costs.

## I.  Unpaid Contributions

Plaintiffs seek $54,060.39 in unpaid contributions. The Rice declaration, and the Lawrie supplemental affidavit and accompanying audit report, show hours that McDougall reported in its payroll records for certain employees during the audit period. The affidavit compares those numbers to the corresponding hours that McDougall reported to the Control Board for contributions. The audit invoice demonstrates that, during the audit period, McDougall failed to report a total of 2,486.66 hours. The audit report multiplies these unreported hours by the applicable rates of pay to reach a total unpaid contribution amount of $54,060.39. The Court has reviewed the audit report and the underlying records and identifies no substantial errors in the auditor's calculations.[2] Accordingly, Plaintiffs' motion for default judgment as to the unpaid contribution amount of $54,060.39 is granted.

## II.  Liquidated Damages

ERISA states that—in addition to interest on unpaid contributions—a plaintiff is entitled to the greater of either the liquidated damages amount provided for under the plan or the total accrued interest amount on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). The CBA in this case provides that, if McDougall is delinquent in its contribution obligations, it is liable for a liquidated damages penalty that equals 10

---

[2] Counsel for the Plaintiffs submitted a supplemental affidavit with an updated Exhibit D to the Rice declaration, which is the document the Court relies upon.

percent of the unpaid contributions and if the contribution remain unpaid after the 10th

day of the following month then the liquidated damages increase to 20 percent of the

unpaid contributions. (Rice Decl. Ex. B. at 11.) As such, the liquidated damages amount

is $10,812.08, which is 20 percent of the unpaid contribution amount of $54,060.39.

Plaintiffs are also entitled to liquidated damages of $1,661.8, which is 20 percent of

$8,309.40, the delinquent January 2018 payment. Because the liquidated damages amount

is greater than the interest amount provided for under the CBA, Plaintiffs' motion for

default judgment assessing double interest in the total amount of $12,473.96 is granted.

### III.    Reasonable Attorneys' Fees and Costs

Both ERISA and the CBA provide for the recovery of reasonable attorneys' fees

and costs. *See* 29 U.S.C. § 1132(g); Rice Decl. Ex. B, at 12.   Plaintiffs rely on the

supplemental affidavit of their attorney to support their claim for $7,090.14 in attorneys'

fees, and costs and disbursements.

A district court has substantial discretion when determining the reasonableness of

attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211

F.3d 1078, 1085 (8th Cir. 2000). The amount of reasonable attorneys' fees is determined by

employing the lodestar method. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir.

1988); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986);

*see also Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Bhd.*

*Labor Leasing*, 974 F. Supp. 751, 754 (E.D. Mo. 1997) (applying lodestar method in ERISA

context), *aff'd*, 141 F.3d 1167 (8th Cir. 1998). The party seeking to recover attorneys' fees bears the burden of establishing that the requested fees are reasonable. *Hensley*, 461 U.S. at 433.

When calculating the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Id.*; *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). The hourly rate sought by an attorney must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). A district court may rely on its experience and knowledge of prevailing market rates to determine whether a claimed hourly rate is reasonable. *Hanig*, 415 F.3d at 825.

The billing records reflect that, from the commencement of this action through the date on which Plaintiffs filed their motion for default judgment and supporting documents, Plaintiffs incurred $6,546.79 in attorneys' fees and $543.25 in costs and disbursements for a total cost expended of $7,090.04. These fees represent 19.5 hours billed at an hourly rate of $260, 3.25 hours billed at an hourly rate of $265, and 4.75 hours billed at an hourly rate of $195. The work performed during this period included: corresponding with the Court and client representatives, drafting the application for entry of default and supporting affidavit, and drafting the motion for default judgment and supporting documents. The foregoing rates and hours billed between March 15, 2018,

and February 12, 2019, are reasonable. The costs and disbursements incurred are reasonable.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  That Plaintiffs' Motion for Entry of Judgment [ECF No. 19.] is GRANTED.

2.  That judgment, in the amount of $73,624.39 be entered against the Defendant and in favor of the Plaintiffs.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 3, 2019                                    BY THE COURT:

                                                       s/Nancy E. Brasel
                                                       Nancy E. Brasel
                                                       United States District Judge